ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| VILMA MARGARITA CANO GARCÍA; ESCUELA CASA BAMBINI DE VEGA BAJA, INC.  Demandantes-Apelantes  v.  IVÁN OSCAR HERNÁNDEZ RODRÍGUEZ; IVILMA, INC., FEIJOS INC., H/N/C MADELCAR ACADEMY; RODNEY ROS HERNÁNDEZ CRESPO Y/O RIDBET ROS; CARMEN ÁVALO FRANCESCHI Y PEDRO SILVA Y LA SOCIEDAD LEGAL DE GANANCIALES; Y A, B Y C ASEGURADORA, INC.  Demandados-Apelados | KLAN202301037 | *Apelación* Procedente de Tribunal de Primera Instancia, Sala de Bayamón  Civil núm.: D PE2016-0007  Sobre: Nulidad de Escrituras; Daños y Perjuicios |

Panel integrado por su presidente el juez Salgado Schwarz, el juez Ronda Del Toro y el juez Campos Pérez.[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

La parte demandante y apelante, conformada por la Sra. Vilma Margarita Cano García y la Escuela Casa Bambini de Vega Baja, Inc. (señora Cano García y Bambini, respectivamente), comparece ante nos mediante un *Recurso de Apelación.* Solicita la revocación de la *Sentencia* emitida el 11 de julio de 2023, notificada el día 17 siguiente, por el Tribunal de Primera Instancia, Sala de Bayamón (TPI). En el dictamen mencionado, el TPI desestimó con perjuicio todas las causas de acción de la *Demanda* de los comparecientes y los condenó al pago de $5,000.00 por concepto de honorarios por temeridad. En cuanto a la

---

[1] Mediante Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designa al Hon. José I. Campos Pérez en sustitución del Hon. Roberto Rodríguez Casillas.

Número Identificador

SEN2024_____

*Reconvención* instada por la parte demandada y apelada del título, el TPI decretó la desestimación sin perjuicio.

Anticipamos la modificación del dictamen apelado, a los únicos fines de que la desestimación de la *Demanda Enmendada* y de la *Reconvención* sea sin perjuicio y, así modificado, confirmamos. Examinemos el tracto procesal relevante.

## I.

La causa presente se inició con la presentación de una *Demanda* el 8 de enero de 2016 sobre *injunction*, nulidad de escrituras, daños y perjuicios.[2] En esencia, se alegó que la señora Cano García y el Sr. Iván Oscar Hernández Rodríguez (señor Hernández Rodríguez) mantuvieron una relación sentimental desde el 2008. Se adujo que el señor Hernández Rodríguez tomó el control del centro escolar Bambini y, mediante presuntas maquinaciones insidiosas, convenció a la señora Cano García de otorgar las dos escrituras de compraventa impugnadas, a favor de la entidad jurídica Ivilma, Inc. (Ivilma), creada por el demandado Hernández Rodríguez.

Mediante la escritura pública número 6, *Compraventa con parte del precio aplazado,* autorizada por el notario Rodney Ros Hernández Crespo (notario Hernández Crespo) el 27 de mayo de 2010, la señora Cano García vendió a Ivilma una propiedad sita en Vega Baja e inscrita como la finca 2,240. El precio pactado fue de $325,000.00.[3] Por igual, el 27 de mayo de 2010, el notario Hernández Crespo autorizó la escritura pública número 7, *Compraventa asumiendo hipoteca con parte del precio aplazado,* por la cual la señora Cano García vendió a Ivilma un inmueble ubicado

---

[2] Apéndice, págs. 1-20 y anejos a las págs. 21-43.
[3] Inscrita al folio 17 del tomo 51 de Vega Baja, sección IV de Bayamón. Apéndice, págs. 21-30.

en Vega Baja, inscrito como la finca 2,236 por el precio de $100,000.00.[4]

En la misma fecha, la señora Cano García arrendó a Ivilma ambas propiedades por un término de diez años y por un canon mensual de $2,800.00, mediante un *Contrato de arrendamiento*, autorizado por el notario Hernández Crespo como el testimonio número 313.[5]

Los demandantes sostuvieron la nulidad de los negocios jurídicos por inexistencia de la causa y vicios del consentimiento. Asimismo, imputaron responsabilidad civil a otro ente jurídico vinculado al señor Hernández Rodríguez, a saber, Feijos, Inc. (Feijos), que hace negocios bajo el nombre de Madelcar Academy.

Contra el notario Hernández Crespo, quien autorizó los instrumentos otorgados presuntamente "mediante treta y engaño", la parte demandante aseveró que éste no los leyó en voz alta ni explicó su contenido, alcance y efectos legales. Afirmó también que no recibió las prestaciones dinerarias que se indican en las escrituras. Así, pues, en retribución a los daños alegados, solicitó una indemnización de $1,706,370.50 y el decreto de nulidad de ambas escrituras públicas.

El notario Hernández Crespo contestó la reclamación en su contra.[6] Contradijo las alegaciones de nulidad, así como las imputaciones sobre su proceder en la función notarial. Sostuvo que la señora Cano García conocía las implicaciones de la transacción de compraventa. El notario Hernández Crespo reconvino y solicitó una suma de $50,000.00 por los daños emocionales y profesionales causados.

---

[4] Inscrita al folio 1 del tomo 51 de Vega Baja, sección IV de Bayamón. Apéndice, págs. 31-39.
[5] Apéndice, págs. 40-43.
[6] Apéndice, págs. 46-52.

Por su parte, el señor Hernández Rodríguez, Ivilma y Feijos presentaron su alegación responsiva.[7] En ésta, se reconoció la relación sentimental de los litigantes entre los años 2008 y 2015. No obstante, los demandados negaron las alegaciones de daños en su contra por ser contrarias a la verdad y constituir fabricaciones de la señora Cano García. Afirmaron que la demandante suscribió los documentos transaccionales de manera libre y voluntaria, por lo que son válidos en derecho. Apuntaron que la señora Cano García recibió en exceso las prestaciones económicas consignadas en las escrituras.

Además, Ivilma y el señor Hernández Rodríguez reconvinieron y reclamaron el pago de los cánones de arrendamiento adeudados y pactados contractualmente, ascendentes a $184,800.00, así como al desahucio de la señora Cano García. A su vez, los demandados solicitaron varios reembolsos por una suma total de $155,971.76 por concepto del pago de nómina, bonos de los empleados de Bambini, gastos de reparación y mensualidades satisfechas a los hermanos de la demandante, como producto de la partición de la comunidad hereditaria habida entre éstos.

La señora Cano García contestó ambas reconvenciones y reiteró sus previas alegaciones.[8] En síntesis, rechazó los daños alegados por el notario Hernández Crespo y las cuantías reclamadas por el señor Hernández Rodríguez y las corporaciones. Ésta incoó una *Demanda Enmendada*, a los fines de unir como partes demandadas a la señora Carmen Ávalo Franceschi, al señor Pedro Silva García, la sociedad legal de gananciales por éstos compuesta y a Silva & Ávalo, PSC. (matrimonio Silva-Ávalo) y a las

---

[7] Apéndice, págs. 53-65.
[8] Apéndice, págs. 66-68; 69-72.

aseguradoras con nombres desconocidos.[9] Contra las partes incorporadas, los demandantes alegaron incumplimientos y falta de independencia en sus funciones como contadores públicos autorizados. Por consiguiente, los demandantes sumaron a su reclamación el pago de $250,000.00 adicionales.

Observados un sinnúmero de trámites procesales, el 30 de enero de 2023, el señor Hernández Rodríguez, Ivilma y Feijos presentaron un escrito intitulado *Moción de desestimación y sanciones*,[10] al que se unió el matrimonio Silva-Ávalo.[11] Luego, se instó una *Moción suplementaria.*[12] En síntesis, se indicó que, el 30 de diciembre de 2019, la señora Cano García instó una petición de quiebra bajo el Capítulo 13 del Código de Quiebras ante el Tribunal de Quiebras de los Estados Unidos para el Distrito de Puerto Rico (caso número 19-07609-MCF13).[13] Esta petición fue desestimada el 2 de junio de 2022 a solicitud de la demandante. Aun cuando la señora Cano García informó sobre el pleito del título al Tribunal de Quiebras, sin especificar el estatus del caso, omitió notificar las instancias del proceso de quiebra al TPI y a las partes. Ello conllevó que el litigio de marras continuara durante dicho periodo, sin que se ostentara jurisdicción por los efectos de la paralización automática del Código de Quiebras, 11 USC sec. 362.

Los demandados informaron también que la señora Cano García creó la compañía de responsabilidad limitada Dasha, LLC. (Dasha) el 7 de julio de 2022.[14] La demandante funge como la presidenta y único miembro de la junta de directores del ente jurídico. Entonces, el 21 de julio de 2022, la señora Cano García y

---

[9] Apéndice, págs. 73-99.
[10] Apéndice, págs. 100-121.
[11] Apéndice, págs. 122-128 y anejos a las págs. 129-133.
[12] Apéndice, págs. 143-145 y anejos a las págs. 146-152.
[13] Tomamos conocimiento judicial del documento *Voluntary Petition for Individuals Filing for Bankruptcy* presentado por la señora Cano García.
[14] Apéndice, págs. 146-147.

Dasha otorgaron la escritura pública número 30, *Permuta*, de la cual tomamos conocimiento judicial al no ser incluida en los autos. El instrumento público fue autorizado por la notaria Yasbel Enid Escobar Ramírez y, mediante el mismo, la señora Cano García permutó las fincas 2,236 y 2,240 en controversia, valoradas en $80,000.00 y $137,500.00, respectivamente. La permuta se realizó a cambio de las unidades de acciones o participaciones en el patrimonio de Dasha (*membership interest*) equivalentes al valor de los inmuebles. Los demandados indicaron que las propiedades inmuebles fueron inscritas a favor de Dasha el 31 de marzo de 2023.[15] A esos fines, el 10 de febrero de 2023, la señora Cano García y Dasha solicitaron al Registrador de la Propiedad la cancelación y eliminación de la anotación de la *Demanda Enmendada* del caso del epígrafe.[16] Por ende, en conjunto, los demandados peticionaron la desestimación con perjuicio de las reclamaciones en su contra, el pago de honorarios por temeridad y cualquier pronunciamiento que en derecho corresponda.

La señora Cano García se opuso a la desestimación de su causa.[17] En síntesis, enunció que los demandados no cumplieron con los rigores de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. Afirmó que la ausencia de notificación sobre el procedimiento de quiebra no causó perjuicio a los demandados ni acarreó consecuencias jurídicas. Añadió que las escrituras 6 y 7, a las que tildó como simuladas y sin causa, no fueron inscritas por los defectos alegados. Indicó que, al no recibir el precio en éstas consignado y por figurar como titular registral y poseedora de los inmuebles, realizó la permuta antes descrita. Apuntó que los demandados nunca solicitaron la prohibición de enajenar, por lo

---

[15] Apéndice, págs. 148-149.
[16] Apéndice, págs. 150-152.
[17] Apéndice, págs. 134-142.

que ejerció su dominio sobre los referidos inmuebles, que aseguró le pertenecían.

El 17 de julio de 2023, el TPI notificó la *Sentencia* apelada.[18] Allí determinó probados los siguientes hechos, a los que hemos impartido énfasis:

1. La parte codemandante Vilma Margarita Cano García y la parte codemandada Iván Oscar Hernández Rodríguez, mayores de edad, solteros, vecinos de Vega Baja, Puerto Rico, sostuvieron una relación amorosa y de negocios por varios años, desde aproximadamente el año 2008 en adelante, y la cual culminó con anterioridad a la presente *Demanda.*

2. La entidad Escuela Casa Bambini de Vega Baja, Inc. fue incorporada el 20 de abril de 2005 por Vilma Margarita Cano García. Esta entidad es una organización sin fines de lucro debidamente autorizada en el Departamento de Estado del Gobierno de Puerto Rico, Registro 47102.

3. La entidad IVILMA, Inc. fue incorporada el 8 de diciembre de 2009. Esta entidad es una corporación activa en el Departamento de Estado del Gobierno de Puerto Rico, Registro número 193446.

4. El 27 de mayo de 2010, la parte codemandante Vilma Margarita Cano García vendió a la parte codemandada IVILMA, Inc. las fincas número [2,236] y [2,240] del término municipal de Vega Baja. Así surge de las Escrituras número Seis (6) y Siete (7) sobre Compraventa, otorgadas el 27 de mayo de 2010 en la ciudad de Vega Baja, Puerto Rico, ante el notario público Rodney Ros Hernández Crespo. Mediante dichas escrituras la parte demandante, Vilma Margarita Cano Caria, de forma libre y voluntaria, traspasó a la corporación IVILMA, Inc., en pleno dominio ambas propiedades.

5. La finca número 2,236 de Vega Baja es el solar número 102 de la Urbanización Monte Carlo, una cabida de 427.05 metros cuadrados y colinda con la calle "C" de la Urbanización, y la finca número 2,240 de Vega Baja es el solar número 117 de la Urbanización Monte Carlo, con una cabida de 427.05 metros cuadrados y colinda con la Calle Marginal de la Urbanización (Carretera No. 2), [...]

.     .     .     .     .     .     .     .

6. El 27 de mayo de 2010, se otorgó, además, un *Contrato de Arrendamiento* mediante el cual IVILMA, Inc. arrendó las Propiedades a la parte codemandante, Escuela Casa Bambini de Vega Baja, Inc.

---

[18] Apéndice, págs. 153-174.

7. La entidad FEIJOS, Inc. fue incorporada el 15 de febrero de 2012 y [es una] corporación activa en el Departamento de Estado del Gobierno de Puerto Rico, Registro número 309160.

8. El 8 de enero de 2016, Vilma Margarita Cano García y la Escuela Casa Bambini de Vega Baja, Inc. presentaron una [D]emanda en contra de la parte demandada sobre nulidad de las escrituras número Seis (6) y Siete (7) sobre Compraventa, otorgadas el 27 de mayo de 2010 en la ciudad de Vega Baja, Puerto Rico, ante el notario público Rodney Ros Hernández Crespo.

9. El 30 de diciembre de 2019 la parte codemandante Vilma Margarita Cano García presentó una Petición de Quiebras bajo el Capítulo 13 del Código de Quiebras ante el Tribunal de Quiebras de los Estados Unidos de América para el Distrito de Puerto Rico, caso número 19-07609-MCF13. Ni el Tribunal ni la parte demandada fueron notificados de los procedimientos de quiebra [por] más de dos años, desestimada el 2 de junio el de 2022, luego de haber voluntariamente desistido del proceso. Tampoco incluyó a los codemandados como acreedores durante el procedimiento de Quiebras.

10. **El 21 de julio de 2022, la parte codemandante, Vilma Margarita Cano García, permutó las Propiedades a favor de la entidad DASHA, LLC., una corporación de responsabilidad limitada, debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y quien fuera representada en la referida escritura por la misma Sra. Cano García, quien es presidenta y única miembro de la Junta de Directores de la referida corporación, mediante la escritura número treinta (30) ante la notario público Yasbel Escobar Ramírez en San Juan, Puerto Rico.**

11. La escritura de Permuta número 30 del 21 de julio de 2022 fue presentada al Asiento 2022-097632-BY04 e inscrita el 31 de marzo de 2023 a la inscripción 14ta de la finca 2,236 y a la inscripción 8va de la finca 2240, ambas de Vega Baja, Registro de la Propiedad de Bayamón, Sección Cuarta.

A tenor de los enunciados fácticos citados, el TPI concluyó que la acción unilateral de la señora Cano García de permutar a favor de Dasha las propiedades cuya titularidad reclamaba tornó el pleito en uno académico. Si bien el TPI pronunció que la titularidad de los inmuebles correspondía a Ivilma, que Dasha no podía considerarse como un tercero adquirente de buena fe y que la permuta realizada por la parte demandante fue en fraude de

acreedores, toda vez que, en su contra, existía una *Reconvención* que, en parte, estaba relacionada con los inmuebles enajenados, justipreció que el caso ante sí no era justiciable por academicidad.

Por otro lado, el TPI determinó que la señora Cano García actuó con temeridad por no notificar al TPI del procedimiento de quiebras y por prolongar innecesariamente el litigio cuando la controversia entre las partes era inexistente. En consecuencia, condenó a la parte demandante al pago de $5,000.00 por concepto de honorarios de abogado.

Insatisfechos, los demandantes presentaron oportunamente una *Moción de Reconsideración*.[19] El señor Hernández Rodríguez se opuso.[20] El TPI declaró No ha Lugar la solicitud de la señora Cano García y Bambini.[21]

Inconforme todavía, la señora Cano García y Bambini comparecieron ante este foro revisor el 21 de noviembre de 2023, mediante el *Recurso de Apelación* y esbozaron los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Tribunal de Primera Instancia al desestimar con perjuicio la totalidad de la demanda, cuando uno de los fundamentos principales en los que apoya su determinación, fue que la entidad Dasha, LLC., a la cual Cano García traspasó el t[í]tulo de su propiedad, no era parte del caso y era una parte indispensable, lo que privaba de jurisdicción al TPI.

> **SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia al aplicar la más drástica sanción disponible en el procedimiento civil: la desestimación del pleito; sin antes imponer sanciones m[á]s benignas, ni apercibir a la parte afectada antes de desestimar.

> **TERCER ERROR:** Erró el Tribunal de Primera Instancia al motu proprio desestimar Sin Perjuicio la *Reconvención* de la Parte Demandada, sin mediar ninguna solicitud para ello; exponiendo entonces a la parte Apelante a ser subsiguientemente demandada por la parte Reconviniente, sin poder levantar ninguna defensa válida, por haberse archivado su [D]*emanda* Con Perjuicio.

---

[19] Apéndice, págs. 176-190.
[20] Apéndice, págs. 206-232.
[21] Apéndice, pág. 205.

**CUARTO ERROR:** Erró el Tribunal de Primera Instancia al aparentemente desestimar sub silencio y Con Perjuicio y a manera de sanción, la reclamación de Casa Bambini de Vega Baja, Inc. cuando no estaba pendiente ante el TPI, una solicitud de Desestimación contra esa parte co-demandante adicional.

**QUINTO ERROR:** Erró el Tribunal de Primera Instancia al acumular a la drástica sanción de Desestimar totalmente la Demanda Con Perjuicio, la imposición de excesiva suma de $5,000.00 por concepto de honorarios de abogado.

Luego de conceder la prórroga solicitada, la parte demandada en conjunto instó su *Alegato en oposición a Recurso de Apelación.* Con el beneficio de su postura, estamos en posición de resolver.[22]

**II.**

La jurisdicción de los tribunales queda determinada por la aplicación de diversas doctrinas que le dan vida al llamado principio de justiciabilidad. Este principio de limitación autoimpuesta emana del rol que corresponde al Poder Judicial como parte de la trilogía de poderes de nuestro sistema de gobierno. *Muns. Aguada y Aguadilla v. JCA*, 190 DPR 122, 131-132 (2014), que cita a *Lozada Sánchez et al. v. JCA*, 184 DPR 898, 917 (2012). Una de esas doctrinas es la de academicidad que, como corolario del principio de justiciabilidad, "nace del elemental principio de que **los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas**". (Énfasis nuestro). *E.L.A. v. Aguayo*, 80 DPR 552, 558-559 (1958). Un caso académico es aquél que pretende obtener una determinación judicial en torno a una

---

[22] El señor Hernández Rodríguez, además, instó una *Moción de desestimación por academicidad a tenor con las disposiciones de la Regla 83* [*del Reglamento del Tribunal de Apelaciones*] *y sobre otros extremos.* A la petición se unieron Ivilma y Feijo (Madelcar Academy). Toda vez que los argumentos esbozados están vinculados con el dictamen apelado y los señalamientos de error de la señora Cano García, mediante la *Resolución* de 16 de enero de 2024, dispusimos no atender la solicitud anticipadamente a esta *Sentencia* y ordenamos la presentación del alegato en oposición.

**controversia inexistente**, por lo que la sentencia que se dicte en su día no tendrá efectos prácticos. *Id.*, pág. 584. El propósito de este precepto es evitar el inadecuado uso de los recursos judiciales y evitar precedentes innecesarios. *Emp. Pur. Des., Inc. v. H.I.E.Tel.*, 150 DPR 924, 936 (2000), citado en *Super Asphalt v. AFI y otro*, 206 DPR 803, 815-816 (2021). Es decir, **si la controversia pierde vigencia, ya sea por cambios fácticos o jurídicos durante el trámite, en lugar de conceder un remedio, el tribunal sólo emitiría una opinión consultiva**. Por lo tanto, el tribunal debe abstenerse de resolver los méritos de la controversia que ha dejado de estar viva y presente. Véanse, *Lozada Sánchez et al. v. JCA*, *supra*, pág. 913; *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011); *E.L.A. v. Aguayo*, *supra*, pág. 584.

La doctrina de academicidad tiene una serie de excepciones que permiten la consideración de un caso que, de otro modo, resultaría académico en cuanto a su resultado o efecto inmediato. Esto es cuando:

> (1) se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes. (Citas omitidas). *Bhatia Gautier v. Gobernador*, 199 DPR 59, 73-74 (2017).

Del mismo modo, un caso no es justiciable si la parte no ostenta legitimación activa. La legitimación activa es "**la capacidad que se le requiere a la parte promovente de una acción** para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, **obtener una sentencia vinculante**". (Énfasis nuestro). *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 739 (2022), *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*,

*supra*, pág. 69. Al auscultar nuestra jurisdicción, es meritorio examinar la legitimación activa para no adentrarnos a "resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado". *Hernández, Santa v. Srio. de Hacienda, supra*. El Tribunal Supremo ha reiterado que este elemento de justiciabilidad compete, primero, en torno a la **parte que promueve la acción** y, segundo, en cuanto a los **asuntos bajo adjudicación**. *Id.*; *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 564 (1989); *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 723 (1980).

> Al amparo de esta doctrina, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. *Hernández, Santa v. Srio. de Hacienda, supra;* que cita con aprobación a *Bhatia Gautier v. Gobernador, supra*; *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563, 572 (2010); *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002); *Hernández Torres v. Gobernador*, 129 DPR 824, 835-836 (1992).

**B.**

De otra parte, es sabido que los Tribunales de Primera Instancia tienen una gran discreción en el manejo de los procedimientos celebrados en sus salas. Claro está, dicha discreción debe estar respaldada por el convencimiento del juzgador de que la decisión tomada se sostiene en el estado de derecho aplicable a la cuestión planteada. Este ejercicio constituye, precisamente, la **razonabilidad de la sana discreción judicial**. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Con relación a la desestimación en los méritos o con perjuicio, el Tribunal Supremo pautó lo siguiente:

> La Regla 39.2 de Procedimiento Civil, [32 LPRA Ap. V, R. 39.2], contempla la figura de la desestimación en distintas modalidades. En su inciso (a) se reconoce la facultad y discreción que posee el tribunal para desestimar una reclamación, como medida de sanción, por una parte haber incumplido con sus órdenes o por haberse infringido el cuerpo de las reglas procesales.

Por su parte, el inciso (b) reglamenta las desestimaciones por inactividad. Mientras que, el inciso (c) primordialmente se encarga de las desestimaciones por insuficiencia de la prueba (*non-suit*).

Ahora bien, <u>la Regla 39.2 de Procedimiento Civil, *supra*, no se limita a lo antedicho</u>. Resaltamos que en su inciso (c), más allá de atenderse las mociones de *non-suit*, <u>también incluye, *in fine*, una disposición aplicable a otras clases de desestimaciones</u>. En específico, establece:

> (c) [...] **A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 de este apéndice y cualquier otra desestimación, <u>excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable</u>, tienen el efecto de una adjudicación en los méritos.** (Negrilla suplida).

El precitado inciso ilustra el efecto generalmente atribuible a las desestimaciones. Señala que **a menos que el tribunal lo disponga de otro modo,** una desestimación bajo la Regla 39.2 de Procedimiento Civil, *supra* —ya fuera por incumplimiento con las órdenes del tribunal, inactividad o por insuficiencia de prueba— tiene el efecto de una adjudicación en los méritos (*i.e.,* es con perjuicio). Incluso, <u>la norma trasciende las desestimaciones decretadas bajo la Regla 39.2 de Procedimiento Civil, *supra*, y aclara ser igualmente aplicable cuando se trate de cualquier otra desestimación</u>. Al mismo tiempo, de su texto surge que la consecuencia prevista por la Regla 39.2(c) de Procedimiento Civil, *supra*, es inaplicable cuando la desestimación haya sido dictada por falta de jurisdicción o por haberse omitido acumular una parte indispensable. Por supuesto, tampoco aplicaría si otra norma pauta un efecto específico para determinada desestimación. Empero, <u>en ausencia de tales excepciones, la norma detallada cobija a cualquier desestimación decretada</u>.

Partiendo de lo anterior, colegimos que <u>cuando un tribunal desestima un pleito, generalmente tiene discreción para determinar si la desestimación será sin perjuicio, posibilitando así una posterior presentación de la misma reclamación</u>. *Souchet v. Cosío*, 83 DPR 758, 762–763 (1961). Queda clara esta <u>discreción</u> cuando la Regla 39.2(c) de Procedimiento Civil, *supra*, menciona que **la desestimación tiene el efecto de una adjudicación en los méritos, "[a] menos que el tribunal en su orden de desestimación lo disponga de otro modo [...]".** (Negrilla suplida). Por lo tanto, <u>en caso de no especificarse su efecto, generalmente la desestimación es con perjuicio</u>. (Énfasis en el original y subrayado nuestro). *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 265-267 (2021).

Es decir, salvo que el TPI disponga que una desestimación es sin perjuicio, se entenderá que la adjudicación es en los méritos. Ello así, porque la última oración comprendida en la Regla 39.2 (c) de Procedimiento Civil, *supra*, trasciende las desestimaciones contempladas bajo la propia norma. Ahora, según lo esbozado, la máxima curia especifica tres instancias en que la regla general no es aplicable: (1) **cuando se dicta por falta de jurisdicción**; (2) **cuando se ha omitido acumular a una parte indispensable**; y (3) cuando otra norma pauta un efecto específico para determinada desestimación. *VS PR, LLC v. Drift-Wind, supra*, pág. 266-267.

## C.

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente:

> En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. 32 LPRA Ap. V, R. 44.1 (d).

Nuestro Tribunal Supremo ha definido el concepto de temeridad "**como aquella conducta** que hace necesario un pleito que se pudo evitar, **que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables**". (Énfasis nuestro). *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Según lo ha expresado el Tribunal Supremo, la penalidad aspira "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Id.*, pág. 505. **La determinación de si una parte obró con temeridad descansa en la sana discreción del**

**tribunal**. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). La imposición del pago de honorarios de abogado es **imperativa** cuando se concluye que una parte incurrió en temeridad. *Id.* De manera que, los tribunales descansarán en su discreción y determinarán la cuantía a concederse por: (1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342-343 (2011).

En cuanto a los criterios de revisión, por constituir un asunto discrecional del tribunal sentenciador, los foros apelativos sólo intervendremos en dicha determinación cuando surja un claro abuso de discreción. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

### III.

En la causa presente, la señora Cano García y Bambini alegan en el primer, segundo y tercer señalamientos de error que el TPI incidió al desestimar las causas de acción con perjuicio, bajo el fundamento de falta de jurisdicción y sin imponer previamente sanciones más benignas. Aducen que, en caso de ser subsiguiente demandados, estarían impedidos de defenderse.

Como mencionamos, el TPI desestimó con perjuicio la *Demanda Enmendada* al determinar que el pleito adolecía de academicidad y, por ende, no era justiciable. En ese sentido, debemos coincidir con el foro apelado. Por no tratarse de una desestimación causada debido a reiterados incumplimientos con las órdenes judiciales ni porque el pleito estuvo inactivo durante seis meses o más, el TPI no tenía que impartir sanciones ni advertencias previas. En este caso, la desestimación surgió de la insubsanable falta de jurisdicción.

Según reseñamos, la permuta entre las propiedades que la señora Cano García se atribuyó y las participaciones de Dasha

tuvo el efecto de imposibilitar que el TPI pudiera conceder el remedio solicitado en la reclamación. Decididamente, entre Dasha, titular registral de las fincas 2,236 y 2,240, y la apelante no existe una confrontación antagónica que amerite la concesión de un remedio. La intervención judicial en estas instancias —cuando se ha perdido la vigencia de la controversia de la parte apelante y promovente— es improcedente, porque sólo se emitiría una opinión consultiva.

Nótese, además, que en autos no consta una solicitud de sustitución de parte de Dasha para impugnar las escrituras públicas 6 y 7. Tampoco la parte apelada solicitó enmendar la *Reconvención* para reclamarle. Es decir, el tribunal no tiene jurisdicción sobre la persona jurídica de Dasha, supuestamente afectada por los instrumentos públicos impugnados y quien ostentaría capacidad para promover la acción. Un dictamen sin esta parte indispensable resultaría en un pronunciamiento no vinculante.

De hecho, en cuanto a la transacción de permuta inscrita, contraria a los negocios jurídicos cuestionados, la apelante expresó que "no tiene, ni ha tenido nunca, ningún impedimento legal para ejercer su dominio sobre el referido bien, que le pertenece. Por ende, haberla traspasado a una entidad que ella misma organizó, es un acto válido de dominio".[23] Por lo tanto, al permutar los inmuebles, la parte apelante adjudicó por sí la controversia y el TPI no tiene nada que proveer.

De otro lado, tal como reza la norma procesal que gobierna las desestimaciones de las reclamaciones civiles, de ordinario, la desestimación es en los méritos o *con perjuicio*, a menos que el TPI disponga que sea *sin perjuicio*. Sin embargo, la Regla 39.2 (c) establece que la norma general no es aplicable cuando la

---

[23] Véase, *Recurso de Apelación,* pág. 14.

desestimación se dicta por falta de jurisdicción o por haber omitido acumular a una parte indispensable. En este caso, concurren ambas instancias, por lo que es forzoso concluir que la desestimación de autos sea sin perjuicio.

Con relación a los errores tercero y cuarto, la parte apelada indica que la desestimación con perjuicio imposibilita que pueda defenderse contra la parte apelada. Dice, a su vez, que Bambini tenía a su haber sus propias reclamaciones, distintas a las vinculadas con la titularidad de las propiedades. No nos persuade.

La modificación que propende esta curia para que la desestimación sea sin perjuicio subsana la inquietud de la parte apelante de no poder invocar las defensas pertinentes, en caso de que la parte apelada reclame las causas incoadas en su *Reconvención*. Lo anterior aplica, por igual, a la reclamación de Bambini en contra de los apelados. Adviértase que las causas de acción de Bambini sobre supuestos actos de malversación y las imputaciones al notario Hernández Crespo están ineludiblemente subsumidas con las de la titularidad de los inmuebles.

Al respecto, cabe señalar que la desestimación de la *Demanda Enmendada* y de la *Reconvención* por falta de jurisdicción, bajo el fundamento de academicidad, implica la inexistencia de un pronunciamiento judicial en torno a la titularidad de las propiedades. Si bien el TPI realizó expresiones en esos extremos, lo cierto es que los inmuebles fueron objeto de dos compraventas sucesivas e incompatibles, transmitidas por la misma persona natural a distintas personas jurídicas, de las cuales únicamente una de las transacciones fue inscrita, por contar con el tracto necesario.

Finalmente, en el quinto error, la parte apelante cuestiona la imposición de honorarios de abogado. No le asiste la razón.

En este caso, previo al dictamen desestimatorio, el litigio se extendió por más de siete años. De éstos, incluso, el TPI careció de jurisdicción, cuando la señora Cano García decidió ocultar el procedimiento de quiebra instado entre 2019 y 2022. Aun cuando ésta expresa en su recurso apelativo que el devenir del pleito no se afectó con la quiebra desestimada y "[e]s como si la quiebra no hubiera existido",[24] lo cierto es que el proceder fue uno temerario. Aquí, no consta en el expediente que revisamos alguna determinación del síndico, como único representante del caudal y sucesor de las causas de acción del quebrado, a los efectos de decidir si proseguía la causa de acción de autos o permitía a la demandante continuarla. Luego, al realizar la permuta, a sabiendas que la controversia se había extinguido, la parte apelante continuó con el pleito. Como se conoce, incurre en temeridad quien prolonga u obliga a una parte a incurrir en gestiones evitables. Opinamos que la determinación de temeridad del TPI y la cuantía impuesta por concepto de honorarios de abogado son razonables. Por consiguiente, acordamos no intervenir con la discreción del TPI.

**IV.**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, modificamos la *Sentencia* y decretamos la desestimación sin perjuicio de la *Demanda Enmendada* y de la *Reconvención*. Así modificada, se confirma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[24] Énfasis en el original suprimido. Véase, *Recurso de Apelación*, pág. 12.